Francis J. WARNER, Plaintiff,

v.

FEDERAL EXPRESS
CORPORATION,
Defendant.

No. CIV.A.00–399 (SSB).

United States District Court,
D. New Jersey.

Nov. 9, 2001.

Joseph A. Carmen, Haddonfield, NJ, for Plaintiff.

Carla D. Macaluso, John M. Nolan, Jackson, Lewis, Schnitzler & Krupman, Morristown, NJ, for Defendant.

Elaine K. Sanders, Memphis, TN, for Defendant.

### OPINION ON MOTION FOR SUMMARY JUDGMENT

BROTMAN, District Judge.

Presently before the Court is Defendant Federal Express Corporation's ("FedEx") motion for summary judgment requesting the dismissal of Plaintiff Francis J. Warner's ("Warner") age discrimination claim under the New Jersey Law Against Discrimination and breach of quasi–contract claim.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 1983, Plaintiff Warner was hired by Defendant FedEx as a part-

time courier. (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 1; Def.'s Statement of Undisputed Material Facts ("SOF") ¶ 3, Ex. 4.) On March 19, 1984, Plaintiff was upgraded to a full-time courier at FedEx. (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 1; SOF ¶ 4, Ex. 5.) Plaintiff continued to work as a courier for FedEx until his termination on November 7, 1997. (SOF ¶ 6.)

FedEx utilizes a Guaranteed Fair Treatment Procedure ("GFTP") that allows employees to protest certain adverse employment decisions, including the decision to terminate an employee. The procedure is set forth in the Federal Express Employee Handbook ("Employee Handbook"). (SOF ¶ 25, Ex. 30.) On October 6, 1997, Plaintiff filed a complaint under the GFTP protesting his most recent performance review and requesting that Defendant lower his goal of stops per hour. (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 1; SOF ¶ 29, Ex. 34.) During the investigation of Plaintiff's complaint, Defendant alleges that it discovered discrepancies in Plaintiff's delivery and pick-up procedures. (SOF ¶ 30.) Management determined that Plaintiff violated its Acceptable Conduct Policy by falsifying electronic documents and terminated his employment. (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 1; SOF ¶ 33, Ex. 9.) Plaintiff proceeded to file another complaint under the GFTP protesting FedEx's decision to terminate him. (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 1, Ex. 1.)

The GFTP entails a three-step process: (1) management review, (2) officer review, and (3) executive review. (SOF, Ex. 30.) At each level of review, FedEx is required to take certain actions to properly process an employee's complaint. (*Id.*) Plaintiff's complaint proceeded through Step 1, Step 2, and Step 3 of the GFTP. (*Id.*) The decision to terminate Plaintiff was upheld at each level of review. (SOF ¶¶ 34–36.)

Subsequently, Plaintiff brought this action against Defendant asserting age discrimination and breach of implied employment contract claims. Plaintiff alleges that Defendant discriminated against him on the basis of his age in violation of the New Jersey Law Against Discrimination ("LAD"). In his complaint, Plaintiff asserts that "[t]he Defendant ... retained younger employees with less experience and targeted the Plaintiff for termination based upon his age and experience." (Pl.'s Am. Compl., First Count.) Plaintiff also alleges that the GFTP established a quasi-contract that was breached by Defendant's failure to properly review the relevant facts of Plaintiff's termination as required by the procedure. (Pl.'s Am. Compl., Third Count.) Presently before the Court is Defendant's summary judgment motion requesting the dismissal of both claims.

## II. *SUMMARY JUDGMENT STANDARD*

The standard for granting a motion for summary judgment is a stringent one, but it is not insurmountable. Federal Rule of Civil Procedure 56 provides that summary judgment may be granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir.1996) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin*, 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or . . . vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

## III. *DISCUSSION*

### A. New Jersey Law Against Discrimination Claim

Plaintiff alleges that Defendant discriminated against him on the basis of his age in violation of the New Jersey Law Against Discrimination ("LAD"). N.J.S.A. 10:5–1 *et seq.* The LAD provides that it is an unlawful employment practice for an employer "because of the . . . age, . . . of any individual, to refuse to hire or employ or to bar or to discharge or require to retire,

unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. . . ." N.J.S.A. 10:5–12(a). Age discrimination claims under the LAD and Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, are governed by the same standards of proof and burdens of persuasion. *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir.1996); *Swider v. Ha–Lo Industries, Inc.*, 134 F.Supp.2d 607, 621 (D.N.J.2001). Therefore, it is appropriate to examine both federal and New Jersey case law to evaluate Plaintiff's age discrimination claim. *Swider*, 134 F.Supp.2d at 621.

### 1. *Prima Facie Case*

First, Plaintiff must establish a prima facie case of age discrimination. To do so, a plaintiff must prove by a preponderance of the evidence, "(1) that he is a member of a class protected by the anti-discrimination law; (2) that he was performing his job at a level that met his employer's legitimate expectations; (3) that he was discharged, and (4) that he was replaced by someone sufficiently younger to give rise to an inference of unlawful age discrimination." *Swider*, 134 F.Supp.2d at 621; *see also Lawrence*, 98 F.3d at 65–66. The plaintiff's burden at this level is not an onerous one, and it is generally not difficult to establish a prima facie case. *Swider*, 134 F.Supp.2d at 621.

Neither party disputes that the first and third prongs of Plaintiff's prima facie case are satisfied. At the time of his termination, Plaintiff was 40 years old and, as such, was a member of a protected class. Also, Plaintiff suffered an adverse employment action in that he was in fact terminated. The second and fourth prongs of

Plaintiff's prima facie case, however, are greatly disputed. Defendant argues that the second prong of the prima facie case is not satisfied because Plaintiff was not performing his job at a level that met management expectations. Defendant points to statements in Plaintiff's performance reviews that describe Plaintiff as "not interested in helping out where he might be needed," "less willing to handle packages that were to be delivered to out-of-the-way stops," and as not "cooperative if it wasn't to his advantage." (SOF ¶¶ 9, 10, 12.) Defendant also points to statements in these reviews which indicate that Plaintiff "milk[ed] the clock occasionally," "made additional work for himself," had "delayed" and "unacceptable" checkout times, and "needed to improve his on-road effectiveness to comply with station productivity goals." (SOF ¶¶ 16, 21, 22.) Additionally, Defendant submits a "Reminder Letter" that was issued to Plaintiff on November 22, 1995 for punching in early despite instructions from management to begin work at his scheduled start time (SOF ¶ 24) and a customer complaint filed against Plaintiff on March 7, 1997 which states that Plaintiff took packages from a customer even though she asked him not to and was not even on his route. (SOF ¶ 27.)

Although Defendant provides evidence which raises doubts as to Plaintiff's ability to meet legitimate employer expectations, Defendant fails to reveal that many of the negative comments in Plaintiff's performance reviews are couched between a plethora of positive statements regarding Plaintiff's work ability.[1] Plaintiff did receive low scores in certain areas of his evaluation, such as paper work accuracy, yet he excelled in many other areas. In fact, the majority of Plaintiff's performance reviews indicate that his overall work performance was "above satisfactory." (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 2–3.) This evidence is more than sufficient to raise a genuine issue of material fact as to whether Plaintiff was performing his job at an adequate level.

Plaintiff must, however, also establish the fourth prong of the prima facie case—that he was replaced by someone sufficiently younger to give rise to an inference of unlawful age discrimination. *Swider*, 134 F.Supp.2d at 621. The Court may consider all relevant factors to determine whether Plaintiff was replaced by someone sufficiently younger to permit an inference of age discrimination. Furthermore, in making its determination, the Court is not limited to considering only Plaintiff's final replacement. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir.1995). Immediately following Plaintiff's termination, two "swing drivers," ages fifty and thirty-eight, shared the responsibility of covering Plaintiff's former route. (SOF ¶ 46.) Over a year after his termination, the area covered by that station was revamped, and Plaintiff's former route is now covered by two couriers, ages thirty-four and thirty-eight at the time they took over Plaintiff's route. (SOF ¶ 47.) These couriers were not recently hired by FedEx, but had worked as couriers for FedEx long before Plaintiff was terminated. (SOF ¶¶ 50–51.)

1. Plaintiff's performance reviews also includes statements indicating that Plaintiff "excels as a delivery and pick up courier," "has developed into a strong employee in most areas," "exhibits a number of fine qualities that a courier must have to be successful," "is an experienced and a very good courier," "is a good employee for Federal Express," "has once again had a good review period," "has always been a very dependable employee," "is an excellent employee," "is and always has been very dependable," and "is a very good employee." (SOF Exs. 14–19, 21, 23–26.)

Based upon these facts, Plaintiff cannot establish that he was replaced by someone sufficiently younger to raise an inference of age discrimination. Initially, Plaintiff's former route was covered by a worker 10 years older than Plaintiff and another worker that was only two years younger. Although Plaintiff's route was eventually covered by employees that were six and two years younger than he was at the time of his termination, the circumstances surrounding Plaintiff's termination and replacement hardly seem to suggest that there was any discriminatory animus towards older employees at FedEx. Plaintiff's complaint alleges that "[t]he Defendant ... retained younger employees with less experience and targeted the Plaintiff for termination based upon his age and experience." (Pl.'s Am. Compl., First Count.) Yet, Plaintiff has failed to provide any evidence of Defendant's retention of similarly situated younger employees. In fact, Plaintiff does not present any evidence of unlawful age discrimination other than the ages of the employees who proceeded to cover his former route, one of whom was ten years older. Accordingly, Plaintiff failed to set forth evidence adequate to create an inference of unlawful age discrimination. *Swider*, 134 F.Supp.2d at 622. Although the facts of this case do not give rise to a discriminatory inference, the burden placed upon Plaintiff at this stage is not intended to be onerous, and thus the Court will continue to consider Plaintiff's age discrimination claim as if Plaintiff has set forth a prima facie case.

### 2. Legitimate Non-discriminatory Reason

■ If an employee establishes a prima facie case of discrimination, a presumption is created that the employer unlawfully discriminated against him. *Swider*, 134 F.Supp.2d at 621. At this

point, the burden shifts to the defendant employer to articulate a "legitimate non-discriminatory" reason for the adverse employment decision. *Lawrence*, 98 F.3d at 66; *see also Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994). The employer carries only the burden of production, not the burden of persuasion, and the evidence produced is sufficient if it raises a genuine fact issue as to whether the employer's actions were discriminatory. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Swider*, 134 F.Supp.2d at 622; *Greenberg v. Camden County Vocational and Technical Schools*, 310 N.J.Super. 189, 708 A.2d 460, 465–66 (1998). Furthermore, if the employer provides a legitimate business explanation, "then the presumption of discriminatory intent created by the employee's *prima facie* case is rebutted and the presumption simply drops out of the picture." *Barber v. CSX Distribution Services*, 68 F.3d 694, 698 (3d Cir.1995) (citations omitted).

■ Defendant has set forth legitimate non-discriminatory reasons for firing Plaintiff. During its investigation into Plaintiff's GFTP complaint, Defendant discovered numerous incidents of Plaintiff's falsification of documents. Specifically, Defendant alleges that on October 14, 1997, Plaintiff entered a false code indicating that a customer was not in just so that he could meet the commitment time on a package. (SOF ¶ 31.) Defendant alleges that on October 16, 1997, Plaintiff electronically entered a fictitious zip code which indicated that there was an incorrect address and caused an unnecessary charge to the customer. Defendant asserts that Plaintiff did this for the sole purpose of adding additional stops to his day. (*Id.*) On October 17, 1997, Plaintiff reportedly made nine delivery attempts in eleven min-

utes. (*Id.*) Management traced this same path, however, and it took thirty-one minutes to complete, not including entering and exiting the van and making the necessary scans at the customer location. Defendant alleges that Plaintiff falsified his delivery attempts in order to increase his number of stops per hour. (*Id.*) Also on October 17, 1997, Defendant alleges that Plaintiff entered a code which indicated that a business was closed. Yet, management confirmed with the recipient at this address that someone was available to sign for the package. Defendant claims that Plaintiff again falsified his electronic records to create an additional stop because he would have to return to deliver the package if in fact the business was closed on his initial delivery attempt. (*Id.*) These are but a few of the reported incidents of falsification of documents that Defendant sets forth in its brief. These incidents, in combination with Defendant's reasons for claiming that Plaintiff was not meeting legitimate employer expectations, are legitimate non-discriminatory reasons for Plaintiff's termination.

### 3. Pretext

Since Defendant satisfied its burden of providing a legitimate non-discriminatory reason for 'Plaintiff's termination, the burden shifts back to Plaintiff to "demonstrate that the employer's stated reasons were not its true reasons but were a pretext for discrimination." *Lawrence*, 98 F.3d at 66 (quoting *Sempier*, 45 F.3d at 728); *see also Barone v. Gardner Asphalt Corp.*, 955 F.Supp. 337, 344 (D.N.J.1997); *Greenberg*, 708 A.2d at 466. A plaintiff may defeat summary judgment by either "(i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."

*Fuentes*, 32 F.3d at 764; *see also Waldron v. SL Industries, Inc.*, 56 F.3d 491, 503–04 (3d Cir.1995) (applying *Fuentes* reasoning to plaintiff's New Jersey LAD claim); *Barone*, 955 F.Supp. at 345. If Plaintiff produces sufficient evidence to prove pretext, he need not produce any additional evidence of discrimination in order for the case to proceed to trial. *Sempier*, 45 F.3d at 731; *Fuentes*, 32 F.3d at 764. To prove pretext, Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employers' proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] nondiscriminatory reasons.'" *Fuentes*, 32 F.3d at 765 (citations omitted); *see also Sempier*, 45 F.3d at 731 (stating that pretext is proven by examining the record for "evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons"); *Greenberg*, 708 A.2d at 466. Plaintiff's evidence rebutting Defendant's non-discriminatory reason "must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Swider*, 134 F.Supp.2d at 627; *see also Fuentes*, 32 F.3d at 764. The standard at this stage places a "difficult burden" on the plaintiff. *Fuentes*, 32 F.3d at 765.

Plaintiff has not met his burden of proving that defendant's legitimate, non-discriminatory reasons were pretextual. Plaintiff has done nothing to discredit Defendant's proffered legitimate non-discriminatory reasons for his termination besides generally denying Defendant's charges of falsifying the records. (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 6.) To avoid sum-

mary judgment, Plaintiff must do more than argue that defendant's explanations should not be believed. *Fuentes*, 32 F.3d at 764. Plaintiff has offered no evidence which raises a doubt as to the credibility of Defendant's stated reason for terminating Plaintiff.

Additionally, Plaintiff has not come forward with any evidence from which a factfinder could conclude that an illegitimate factor was more likely than not a motivating cause of his termination. There is no proof of discrimination in the record besides whatever inference is drawn from the fact that Plaintiff was a member of a protected class and was terminated. Although Plaintiff's complaint alleges that Defendant "retained younger employees with less experience and targeted the Plaintiff for termination based upon his age and experience" (Pl.'s Am. Compl., First Count), Plaintiff does not present any evidence to support this bare, conclusory statement. Plaintiff's inadequate presentation of pretext in this case stands in stark contrast to that set forth by the plaintiff in *Greenberg v. Camden County Vocational and Technical Schools*, 310 N.J.Super. 189, 708 A.2d 460, 465–66 (1998) (surviving summary judgment in a New Jersey LAD claim by providing evidence that the defendant's proffered reason for plaintiff's failure to be rehired was pretextual). In that case, the plaintiff adequately proved pretext in her age discrimination claim by demonstrating that other younger teachers had similar deficiencies and received as many "memos of concern" as she did, yet they were retained by the school district. *Id.* at 468. The plaintiff also submitted evidence that another teacher, the oldest of the teachers terminated, had fewer deficiencies than any of the younger female teachers granted tenure. *Id.* at 469. Additionally, she provided a statistical chart illustrating that of all the teachers up for tenure over the last five years, all female teachers over the age of forty-five were terminated, while all the younger teachers were retained. *Id.* In the present case, unlike in *Greenberg*, Plaintiff makes bald assertions of discrimination and pretext without any such evidence to support these claims. Therefore, there is no genuine issue of material fact which precludes summary judgment for Defendant.

Plaintiff failed to offer any evidence that casts doubt on the proffered non-discriminatory reasons for his termination. Absent any evidence to the contrary, the only logical inference from the record is that Plaintiff was terminated due to his falsifying of company records. Accordingly, there is no material issue of fact which precludes summary judgment for Defendant and Plaintiff's claim of age discrimination under the LAD is dismissed.

### B. Breach of Quasi–Contract Claim

Plaintiff alleges that the Guaranteed Fair Treatment Procedure ("GFTP") set forth in Defendant FedEx's Employee Handbook created an implied promise that FedEx would follow the grievance procedure outlined therein to review its decision to terminate him. Plaintiff further alleges that Defendant breached the GFTP by "refusing to review the relevant facts of Plaintiff's termination and denying Plaintiff fair treatment as promised." (Pl.'s Am. Compl., Third Count.)

In New Jersey, an employment relationship remains terminable at the will of either an employer or employee unless there is an agreement that provides otherwise. *Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 643 A.2d 546, 553 (1994). Consistent with this approach, New Jersey recognizes a cause of action for breach of an implied contract against employers for violating an implied

promise in an employee handbook or manual. *Woolley v. Hoffmann–La Roche, Inc.*, 99 N.J. 284, 491 A.2d 1257, 1258 (1985), *modified on other grounds*, 101 N.J. 10, 499 A.2d 515 (1985). In *Woolley*, the Supreme Court of New Jersey held that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment ... would otherwise be terminable at will." 491 A.2d at 1258. The reasoning in the *Woolley* decision applies not only to "for cause" provisions in an employment manual, but also extends to termination procedures such that "if a plaintiff can prove that an employment manual containing job-security and termination procedures could reasonably be understood by an employee to create binding duties and obligations between the employer and its employees, the manual will constitute, in effect, a unilateral offer to contract that an employee may accept through continued employment." *Witkowski*, 643 A.2d at 553. Accordingly, an employment manual or handbook that contains a procedure required before termination may create an employment contract and be contractually enforceable. *Id.* at 549–50; *Woolley*, 491 A.2d at 1264; *Schwartz v. Leasametric, Inc.*, 224 N.J.Super. 21, 539 A.2d 744, 749–50 (1988).

Although the parties do not address this point, it is worthwhile to recognize that the GFTP at issue in this case is distinguishable from the termination procedures at issue in most breach of implied contract cases. In most cases, plaintiff employee alleges that defendant employer breached an implied contract provision in a handbook or manual by failing to properly follow a specified progressive discipline procedure that is required before he or she may be terminated. *See e.g., Zawadowicz v. CVS Corp.*, 99 F.Supp.2d 518, 534–37 (D.N.J.2000) (analyzing plaintiff's claim that defendant breached an implied contract provision by failing to adhere to the progressive discipline procedures set forth in its Attendance Policy before discharging him); *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 643 A.2d 554, 558 (1994) (discussing breach of an implied contract claim in the context of a three-step disciplinary procedure required before termination for cause); *Schwartz*, 539 A.2d at 749–50 (holding that an employment manual with a three-step progressive-discipline procedure gave rise to an implied contract). In this case, however, the GFTP set forth in Defendant's Employee Handbook does not create a mandatory procedure that the employer must comply with before terminating an employee. Rather, the GFTP provides an employee with the right to commence a three-step procedure of review *after* an adverse action has been taken by the employer.[2] (SOF, Ex. 9.)

■ Nevertheless, following the unilateral contract theory set forth in *Woolley* and its progeny, the terms of this grievance procedure may constitute a binding implied contract between employer and employee. The ability to proceed through the GFTP is described by the Defendant as a "right" the employees have to protest certain employment decisions. (SOF, Ex. 9.) In Defendant's Employee Handbook, it states that the GFTP is a "mandatory procedure" which "guarantees an employee the right to access the process for the

---

**2.** At the end of Plaintiff's termination letter, there is a statement informing him that "[s]hould [he] in good faith believe this action is unfair, [he] ha[s] a right to proceed to Step 1 of the Guaranteed Fair Treatment Procedure by submitting the attached bubble form within five (5) calendar days of [his] receipt of this letter...." (SOF, Ex. 9.)

resolution of problems, complaints, or concerns." (SOF, Ex. 30.) Specifically, the Employee Handbook states that an employee may use the GFTP to resolve any controversy that arises out of his or her employment or "termination from employment." (*Id.*) As such, the GFTP may be considered a term and condition of employment that "constitute[s], in effect, a unilateral offer to contract that an employee may accept through continued employment." *Witkowski*, 643 A.2d at 553; *see also McQuitty v. General Dynamics Corp.*, 204 N.J.Super. 514, 499 A.2d 526, 529 (1985) ("Published employment policies when circulated generally to employees amount to an offer which an employee accepts by performance. *Woolley* is ... a recognition of basic contract principles concerning acceptance of unilateral contracts."). The GFTP may be viewed as a benefit provided to employees which is accepted and relied upon as part of their continued employment at FedEx. *Woolley*, 491 A.2d at 1266 ("Our courts will not allow an employer to offer attractive inducements and benefits to the workforce and then withdraw them when it chooses. . . .").

 In *Fregara v. Jet Aviation Business Jets*, 764 F.Supp. 940 (D.N.J.1991), the Court held that a mandatory grievance procedure in an employee handbook, similar to the procedure at issue in this case, created a binding contractual provision requiring the plaintiff to utilize an established internal grievance procedure before resorting to the courts. *Id.* at 953. Although the *Fregara* court was discussing the grievance procedure in the context of a plaintiff employee's failure to exhaust his remedies, the effect of the resulting decision remains the same—the terms and conditions of a grievance procedure may be contractually binding upon both an employer and employee. In fact, in the present case, Defendant issued a "Record of Receipt" of the Employee Handbook which Plaintiff was required to sign and return stating that "[e]mployees are ... expected to use the GFTP to resolve all work-related disputes." (SOF, Ex. 8.) It seems to follow that the GFTP in Defendant's Employee Handbook may create binding obligations upon both employer and employee. Accordingly, the distinction between the present case and other breach of implied contract cases does not prohibitively render the provisions of the GFTP contractually unenforceable. It is thus necessary to determine whether the employee handbook does in fact create an implied contract between employer and employee.

 The "key consideration" in deciding whether an employment handbook creates an implied contract is "the reasonable expectations of employees." *Witkowski*, 643 A.2d at 550. In determining the reasonable expectations of employees, a court may consider such factors as "the definiteness and comprehensiveness of the termination policy and the context of the manual's preparation and distribution." *Id.* at 550. Thus, when a handbook is "widely disseminated," "definite and comprehensive in its terms," and "contains no clear and prominent disclaimer," the handbook creates an enforceable contract. *Zawadowicz*, 99 F.Supp.2d. at 534. The parties in this case do not dispute the definiteness and comprehensiveness of the procedure, nor do they contest the context of the manual's preparation and dissemination. Defendant does argue, however, that: (1) an implied contract does not exist because the employer effectively disclaimed any contractual relationship with the employee, and (2) even if the GFTP does create a contractual relationship between the employer and employee, Plaintiff cannot prove that Defendant failed to comply with the procedures set forth in

the GFTP. The Court will address each argument in turn.

The New Jersey Supreme Court, in *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 643 A.2d 554 (1994), set forth the standard an employer must adhere to in order to effectively disclaim the implication that a handbook or manual creates an implied promise. First, the disclaimer must contain an "appropriate statement" in straightforward terms that does not contain "confusing legalese." *Id.* at 560–61. This "clarity requirement," as it has been later coined, "compels analysis of the language and content of a disclaimer." *Pepe v. Rival Co.*, 85 F.Supp.2d. 349, 383 (D.N.J.1999) (quoting *Sellitto v. Litton Systems, Inc.*, 881 F.Supp. 932, 933 (D.N.J.1994)). The language of the disclaimer must be "such that no one could reasonably have thought [the manual] was intended to create legally binding obligations." *Nicosia*, 643 A.2d at 560 (quoting *Woolley*, 491 A.2d at 1265). Additionally, the disclaimer must be in a "very prominent position." *Nicosia* at 561 (quoting *Woolley*, 491 A.2d at 1270). The "prominence requirement" addresses the placement of a disclaimer and the likelihood that it will attract a reader's attention. *Pepe*, 85 F.Supp.2d at 383. To satisfy this requirement, the disclaimer "must be separated from or set off in a way to attract attention." *Nicosia*, 643 A.2d at 561.

▇▇▇ Defendant asserts that various records of receipt which Plaintiff signed and returned to FedEx acknowledging his receipt of the Employee Handbook constitute effective disclaimers which negate any implied contractual obligations that might be contained therein. (SOF, Ex. 8.) The first two sentences of the first paragraph of the 1993 Record of Receipt, the most recent of the records of receipt, state that "[t]he Company wants you to understand that *The Federal Express Employee Handbook* should not be considered a contract of employment, nor should *The Federal Express Employee Handbook's* provisions be read or implied to provide for one. Your specific rights as an employee are governed by the Employment Agreement you signed in your employment application." (*Id.*) The first sentence of the second paragraph of the Record of Receipt requires the employee to acknowledge that "[he or she] understand[s] that *The Federal Express Employee Handbook* contains guidelines only and that the Company can modify this publication by amending or terminating any policy, procedure, or employee benefit program at any time."[3] (*Id.*) In *Mardini v. Viking*

---

**3.** The full text of the 1993 Record of Receipt is reproduced below:

> **Record of Receipt—Permanent Employees**
> **Please read carefully, complete the information below and sign, and return this page to your manager so he may review it and forward it to the Personnel Information Control Center (PICC).**
> The Company wants you to understand that *The Federal Express Employee Handbook* should not be considered a contract of employment, nor should *The Federal Express Employee Handbook's* provisions be read or implied to provide for one. Your specific rights as an employee are governed by the Employment Agreement you signed in your

employment application. For more specific guidelines, refer to the PEOPLE manual and *Your Employee Benefits* book. Official personnel policies, as found in the PEOPLE manual, are referenced throughout the Employee Handbook and in the index. Your manager will make the PEOPLE manual available to you upon request and answer any questions you may have about policies and procedures. The Company provides the Guaranteed Fair Treatment Procedure (GFTP/EEO Process) to resolve employment disputes and problems quickly. Employees are therefore expected to use the GFTP to resolve all work-related disputes.
> I understand that *The Federal Express Employee Handbook* contains guidelines only and

*Freight, Inc.,* 92 F.Supp.2d 378 (D.N.J. 1999), the Court held that the language in defendant's disclaimer was sufficient to satisfy the clarity requirement and thus defeat the implication that an implied contract existed. *Id.* at 383. The disclaimer at issue in that case stated that "[t]he contents of this employee handbook are solely intended to provide guidance and understanding of the benefit plans and policies of Viking Freight System, Inc. These benefits and policies in no way constitute an employment contract. Details and specific information are available in the governing documents." *Id.* Similarly, the FedEx disclaimer makes the employee aware that the provisions of the handbook are only guidelines and that the handbook does not establish a contract of employment. The Court thus holds that the terms of the Employee Handbook are sufficiently clear to make an employee aware that the provisions of the handbook do not provide any contractual rights.

Next, the Court must determine whether FedEx's disclaimer adequately draws the attention of the employee to satisfy the prominence requirement. The *Nicosia* court noted that the prominence requirement can be satisfied by setting off the disclaimer in bold type, underlining it, or setting it off in a different color or border. 643 A.2d at 561. The disclaiming language in Defendant's Record of Receipt is not distinguished in any of these ways. The *Nicosia* court, however, also recognized that the prominence requirement "can be satisfied in a variety of settings," and "no single distinctive feature is essential *per se* to make a disclaimer conspicuous." *Id.* The 1993 Record of Receipt is prominently placed on a separate page at the front of the handbook. (Def.'s Br. in Support of Mot. for Summ. J. at 23); *Mardini,* 92 F.Supp.2d at 383 (citing *Falco v. Community Medical Center,* 296 N.J.Super. 298, 686 A.2d 1212 (1997)) (holding that a disclaimer may satisfy the prominence requirement if it is placed "on a separate page on the first page of the text of the manual"). In addition, the Record of Receipt contains a statement written in bold at the top of the page that explicitly warns the employee to carefully read the information below and return it to his or her manager.[4] The Record of Receipt even requires the employee to sign and date the form in acknowledgement that he or she has "read and fully understand[s]

that the Company can modify this publication by amending or terminating any policy, procedure, or employee benefit program at any time. I understand that the information in the 1993 *The Federal Express Employee Handbook* supersedes all information in previous editions to the extent it is inconsistent with this edition. All information in previous editions inconsistent with this edition is expressly revoked. I further understand that no manager or representative of the Company, other than the CEO or a senior vice president designated by the CEO, has any authority to enter into any agreement modifying this publication in any way, or to enter into an agreement of employment with me for any specified period of time. Any amendment or agreement, if made, shall not be enforceable unless it is in writing and signed by me and the CEO or designated senior vice president.

I understand this publication applies to all employees except those employees whose terms and conditions of employment are governed by a collective bargaining agreement. I have read and fully understand the above statement and have received a copy of *The Federal Express Employee Handbook* on _____.

(date received)

 (date received)

Name: _____ Signature: _____

Employee No.: _____ Date: _____

4. The statement reads: "[p]lease read carefully, complete the information below and sign, and return this page to your manager so that he may review it and forward it to the Personnel Information Control Center (PICC)." (SOF, Ex. 8.)

the above statement and ha[s] received a copy of *The Federal Express Employee Handbook*." (SOF, Ex. 8.) Plaintiff did in fact sign and date the Record of Receipt on November 23, 1993. (*Id.*) Furthermore, although the Record of Receipt is two paragraphs long, the important disclaiming language is noticeably placed in the first sentences of each paragraph. Accordingly, the Court holds that the placement of the disclaimer on a separate page at the front of the handbook, the inclusion of a statement written in bold warning the employee to read carefully, and the requirement that the employee sign, date, and return the form is sufficient to attract an employee's attention to the disclaiming language and thus satisfy the prominence requirement.

 When the language and placement of a disclaimer is not disputed, as in this case, the sufficiency of the disclaimer can be decided as a matter of law. *Pepe*, 85 F.Supp.2d at 383; *Nicosia*, 643 A.2d at 561. Defendant's Record of Receipt satisfies both the clarity and prominence requirements necessary for an effective disclaimer. Therefore, Plaintiff cannot establish an implied contract based upon the Employee Handbook and his claim must be dismissed.

 The Court further holds that even if Plaintiff could establish that an implied contract existed, he cannot prove that Defendant breached that contract by failing to comply with the GFTP. *See e.g., Fowle v. C & C Cola, Div. of ITT–Continental Baking Co.*, 868 F.2d 59, 69 (3d Cir.1989) ("[E]ven if these ITT policies amount to binding promises under *Woolley*, [plaintiff] has not raised a genuine issue of material fact that the relevant policy provisions were not fully complied with."); *Pepe*, 85 F.Supp.2d at 387 ("Because Rival substantially complied with the procedures listed in the Promotions and Transfers section of

the Rival Associate Handbook, Pepe has not established a claim for violations of the implied employment contract."). Plaintiff alleges that Defendant breached the GFTP by "refusing to review the relevant facts of Plaintiff's termination and denying Plaintiff fair treatment as promised." (Pl.'s Am. Compl., Third Count.) Step 1 of the GFTP requires that management "[r]eview all relevant information." (SOF, Ex. 30.) Step 2 of the GFTP requires that the Vice President and Senior Vice President "[r]eview all relevant information," and "[c]onduct additional investigation, when necessary." (*Id.*) Step 3 of the GFTP requires Employee Relations to "[i]nvestigate[ ] and prepare[ ] case for Appeals Board," and the Appeals Board to "[r]eview[ ] all relevant information." (*Id.*) Defendant substantially complied with these requirements mandated by the GFTP.

Defendant submitted numerous documents evidencing its investigation of Plaintiff's performance and review of his termination. (SOF Ex. 36.) Defendant's GFTP/EEO Complainant Executive Summary ("Executive Summary") illustrates that during its investigation of the matter, station management conducted a simulated run of Plaintiff's routes, and an experienced courier ran Plaintiff's route to give an analysis of how the route should be done. (*Id.*) Defendant also conducted a review of the Courier Route Planner and a review of Plaintiff's FAMIS 129 report which indicated that Plaintiff entered erroneous codes. (*Id.*) The Executive Summary provides a four page summary of the relevant facts regarding Plaintiff's termination, a list of disputed issues, a detailed analysis of the claim, and a personnel recommendation. (*Id.*) Plaintiff specifically alleges that Defendant failed to address and review Plaintiff's problem with duplicate streets on his delivery route. It appears, however, that this con-

cern was addressed and reviewed by Defendant. Under the heading "Employee Position," Defendant's written report states that:

> Fran stated that any duplicate entries are the result of his area having duplicate street names in the various zip codes. Fran also maintains that part of the problem is where the streets are broken in segments and do not run straight through an area. Therefore the entries are not actually the same location. Fran also stated he has encountered packages with bad addresses on them, which has caused him to go to multiple addresses to locate the correct one.

(*Id.*) As part of its Personnel Analysis, Defendant reports that "[i]t became apparent when looking at the map and the delivery sequences that the streets with the same name in different (sic) was not a problem. The problem is that Fran would drive by a stop multiple times before attempting a delivery. The way Fran ran his stops added time to his day." (*Id.*) The inclusion of this statement in its written review leads to the conclusion that Defendant recognized and evaluated Plaintiff's concern regarding duplicate streets before making a final determination to uphold his termination. As it is apparent that Defendant engaged in thorough and detailed analysis of its decision to terminate Plaintiff according to the provisions of the GFTP as it is set forth in the Employee Handbook, no genuine issue of material fact remains in this case and Plaintiff's claim for breach of an implied contract must be dismissed.

## IV. *CONCLUSION*

For the reasons stated herein, Defendant FedEx's motion for summary judgment will be GRANTED and the complaint dismissed in its entirety. The Court will enter an appropriate Order.

## ORDER

**THIS MATTER** having come before the Court upon Defendant's motion for summary judgment; and

The Court having reviewed the record and the submissions of the parties; and

For the reasons stated in the Court's opinion on this date;

**IT IS** on this 9th day of November, 2001 **HEREBY**

**ORDERED** that Defendant's motion for summary judgment to dismiss Count One of Plaintiff's complaint (New Jersey Law Against Discrimination claim) is **GRANTED;** and

**IT IS FURTHER ORDERED** that Defendants's motion for summary judgment to dismiss Count Three of Plaintiff's complaint (breach of quasi-contract claim) is **GRANTED;** and

**IT IS FURTHER ORDERED** that the complaint is dismissed in its entirety.