

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-15-1996

# Lawrence v. Natl Westminister

Precedential or Non-Precedential:

Docket 95-5603

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Lawrence v. Natl Westminister" (1996). *1996 Decisions.* Paper 47.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/47

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-5603
_____


ALBERT L. LAWRENCE

v.

NATIONAL WESTMINSTER BANK NEW JERSEY

                          Albert Lawrence,
                                    Appellant

_____

On Appeal from the United States District Court
        for the District of New Jersey
        (D.C. Civil Action No. 94-cv-01368)
                _____


Argued June 5, 1996

Before:  SCIRICA and ROTH, Circuit Judges
        and O'NEILL, District Judge*

(Filed October 15, 1996)



                GREGORY S. SCHAER, ESQUIRE (ARGUED)
                Law Offices of Linda B. Kenney
                The Galleria, Two Bridge Avenue
                Atrium Building #5, 2nd Floor
                Red Bank, New Jersey 07701

                Attorney for Appellant

*The Honorable Thomas N. O'Neill, Jr., United States District
Judge for the Eastern District of Pennsylvania, sitting by
designation.

THOMAS D. RUANE, ESQUIRE (ARGUED)
St. John & Wayne
Two Penn Plaza East
Newark, New Jersey 07105

STEVEN B. HARZ, ESQUIRE
Robinson, St. John & Wayne
245 Park Avenue
New York, New York 10167

Attorneys for Appellee

_____

OPINION OF THE COURT
_____

SCIRICA, Circuit Judge.

Albert Lawrence appeals the grant of summary judgment to National Westminster Bank in his suit alleging age and handicap discrimination and denial of severance benefits. We will affirm in part, reverse in part, and remand to the district court.

I.

Albert Lawrence was hired by Citizens First National Bank of New Jersey, now National Westminster Bank, New Jersey, in October 1979 as Vice President/Chief Investment Officer of the Trust Department. In 1985 he was promoted to the position of Senior Vice President/Chief Investment Officer.

On June 30, 1987, Lawrence was injured in a car accident and sustained severe back injuries. As a result he wears a back brace. Lawrence alleges he suffers from chronic pain and discomfort because of the injury. Nevertheless, after the accident, Lawrence returned to work and resumed his position with the bank.

In early 1992, Allan Nichols became bank Chairman. Nichols developed new goals and business objectives for the bank, and specifically for the Trust Department. Although the parties' accounts of what ensued over the next one and one half years differ, the bank contends Lawrence's level of performance substantially deteriorated. On September 3, 1993, at the age of sixty, Lawrence was terminated for sub-standard performance and "behavior not befitting a manager."

Lawrence disputes he was fired for "cause." He contends this explanation was pretextual, and that he was fired because of his age and/or his physical condition. Lawrence filed suit in the United States District Court for New Jersey alleging age and handicap discrimination under New Jersey and federal laws.

As we have noted, the district court granted National Westminster Bank's motion for summary judgment. Lawrence v.

National Westminster Bank, New Jersey, No. 94-1368, 1995 WL 506043 (D. N.J. Aug. 16, 1995).  Lawrence now appeals.

## II.

We have jurisdiction over the final order of the district court under 28 U.S.C. § 1291.  "When we review a grant of summary judgment, we apply the same test as the district court should have applied initially."  Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir.), cert. denied, ___ U.S. ____, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995).  A court may grant summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial."  SeeBrewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329 (3d Cir. 1995); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A nonmoving party creates a genuine issue of material fact when it provides evidence "such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In reviewing the record, the court must give the nonmoving party the benefit of all reasonable inferences."  Brewer, 72 F.3d at 330.

## III.

## A.

Lawrence alleges National Westminster Bank violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and New Jersey's Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 et seq., by dismissing him because of his age.

Age discrimination claims under the ADEA and LAD are governed by the same standards and allocation of burdens of proof.  See Retter v. Georgia Gulf Corp., 755 F. Supp. 637, 638 (D. N.J. 1991), aff'd, 975 F.2d 1551 (3d Cir. 1992); see alsoWaldron v. SL Industries, Inc., 56 F.3d 491, 503-04 (3d Cir. 1995).  Lawrence's age discrimination claims are grounded not on direct evidence but on pretext.  We have adopted the McDonnell Douglas burden shifting analysis for age discrimination cases brought under a pretext theory.  See Sempier, 45 F.3d at 728; Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir.), cert. dismissed, 483 U.S. 1052 (1987).  Under the McDonnell Douglas framework, a plaintiff must first present a prima facie case by establishing that (1) he is over 40 years old, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination.  Sempier, 45 F.3d at 728; Chipollini, 814 F.2d at 897.  Once a plaintiff has satisfied the prime facie standard, the burden shifts to defendant to articulate a "legitimate nondiscriminatory" reason for the adverse employment decision.  Should the defendant successfully carry its burden, the plaintiff then "has the opportunity to demonstrate that the employer's stated reasons were not its true reasons but were a pretext for discrimination."  Sempier, 45 F.3d at 728.  At this stage, the plaintiff may defeat a summary judgment motion either: (1) by

discrediting the proffered reasons for termination, directly or circumstantially, or (2) by adducing evidence that discrimination was more likely than not a motivating or determinative cause of the adverse action. Sempier, 45 F.3d at 731; see also Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) ("We hold that, to . . . [defeat a motion for summary judgment], the plaintiff generally must submit evidence which: l) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action").

Here, the parties' disagreement revolves around the "pretext" prong of the discrimination claim. The district court found Lawrence established a prima facie case of age discrimination, but determined "plaintiff failed to offer any evidence that suggests defendant's nondiscriminatory reason for terminating his employment is unworthy of belief." The court then granted summary judgment in favor of National Westminster Bank.

B.

After reviewing the record, we believe Lawrence cast sufficient doubt on National Westminster Bank's proffered reasons for his termination to create a material issue of fact. SeeFuentes, 32 F.3d at 762. National Westminster Bank asserts it dismissed Lawrence because of poor job performance. According to the bank, Lawrence's managerial and customer-relations skills declined dramatically in the year before his termination. He lost customer accounts and the confidence of customers, supervisors and other bank employees.

In particular, National Westminster Bank argues Lawrence's last evaluation is demonstrative of his inadequate performance. The evaluation rated his performance in several areas, falling into three categories: behavior; performance/financial standards; and specific objectives. Overall, he was described as meeting standards in the latter category, but falling below standards in the other two categories. Lawrence challenges the credibility of the evaluation contending that the report was unsigned, undated, incomplete, and never provided to him during his employment.

National Westminster Bank also relies on a March 1993 memorandum, prepared by Richard Moore, for National Westminster Bank's Senior Vice President, Peter Beisler, detailing several reasons why Lawrence was not "the right person to lead [National Westminster Bank's] investment effort in the future and should be replaced in that position." National Westminster Bank contends Moore's memorandum substantiates its assertion Lawrence was fired "for cause."

A jury might well view Moore's memorandum as evidence that National Westminster Bank's proffered reasons for Lawrence's termination were not pretextual. Lawrence, however, contends Moore prepared the memorandum as an after-the-fact justification for the discriminatory employment decision. According to Lawrence, the memo was written at the direction of National

Westminster Bank's human resources office once the termination decision was made.  Furthermore, Lawrence claims Moore did not actually believe he was incapable of performing at a satisfactory level.  At his deposition, Moore conceded he had no reason to believe Lawrence was incapable; rather, he thought Lawrence did not want to implement the kind of changes envisioned by Moore and the bank's new leadership.  A jury could find Lawrence's account credible.

To substantiate his account, Lawrence relies on depositions of his subordinates, which portray his performance in a favorable light.  According to Edward Hofmann, a Trust Portfolio Manager for the Trust Department, and Leonard Nedswick, an Administrative Officer in the Trust Department, Lawrence was competent and expressed an enthusiastic and positive attitude toward his work.  Hofmann described him as "a thorough investment professional, very interested in his business" and as "a very good portfolio manager."  Nedswick said he considered Lawrence qualified to service the accounts on which they worked together.  Moreover, in contrast to National Westminster Bank's assertions, Nedswick stated he had never heard of an instance where Lawrence failed to inspire his co-workers, and based on his experience working with Lawrence, never believed him to be disinterested in customer contacts.  Both Hofmann and Nedswick stated they knew of no complaints about Lawrence's overall performance, and were unaware he was considered by upper management as the least favored portfolio manager.

We also differ with the district court over its observation that Lawrence's evaluations gradually grew less favorable over time.  Our review of Lawrence's performance evaluations contained in the record does not reveal on obvious downward trend.  Whether there was a trend, and what significance should be attached to a pattern of performance, should be determined by the fact finder.

### C.

In view of the foregoing, we believe the district court erred in ruling Lawrence failed to offer "any" evidence impugning National Westminster Bank's justification for his termination.  "On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative."  Brewer, 72 F.3d at 331.  As we explained in Sempier, the question is whether the record could support an inference the employer did not act for a non-discriminatory reason.  Sempier, 45 F.3d at 732.  We believe such an inference could be supported by the record here.  We will reverse the grant of defendant's summary judgment motion on the age discrimination claims, and remand to the district court.

### IV.
### A.

Lawrence also alleges National Westminster Bank violated the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq., and New Jersey's Law Against Discrimination, by discriminating against him on account of his back injury.  Lawrence asserts both an improper termination claim as well as a

failure to accommodate claim.  (Compl. at ¶ 26.)

The ADA proscribes "discrimination against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The term "qualified individual with a disability" means a person who, with or without "reasonable accommodation," can perform the essential functions of the employment position that person holds or seeks.  42 U.S.C. § 12111(8).  In addition, under the Act, an employer must make "reasonable accommodations" to the "known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee."  42 U.S.C. § 12112(b)(3).  New Jersey's Law Against Discrimination also prohibits unlawful discrimination because of a person's "handicap" in employment.  See N.J.S.A. 10:5-4.1 and 10:5-29.1.

B.

Turning to Lawrence's allegation that National Westminster Bank violated the ADA by firing him because of his disability, we rely on a pretextual analysis structurally similar to the one used for his age discrimination claim.  See McNemar v. Disney Store, Inc., 91 F.3d 610, 619 (3d Cir. 1996) (in ADA cases, courts apply the Title VII burden-shifting rules); Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 157 (3d Cir. 1995) (explaining the methods and manner of proof applicable in other discrimination contexts, such as those involving Title VII and the ADEA, also apply in an action brought under the ADA).  Unlike Lawrence's age discrimination claims, in this instance, the district court found Lawrence had failed to make out a prima facie case.  The court granted summary judgment against Lawrence because he had not introduced sufficient evidence to suggest a causal connection between his disability and his termination.

The district court erred when it required Lawrence to proffer evidence of a causal relationship to establish his prima facie case.  Under the McDonnell Douglas framework the elements necessary for a prima facie case may vary depending on the factual situation.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973).  But to establish a prima facie case for discriminatory employment termination, the plaintiff must prove by a preponderance of the evidence that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was dismissed despite being qualified; and (4) he was ultimately replaced by a person sufficiently outside the protected class to create an inference of discrimination.  See Sempier, 45 F.3d at 728 (ADEA termination case); Chipollini, 814 F.2d at 897 (same).  As with cases brought under Title VII and ADEA, it is permissible in an ADA case for a plaintiff to prove discriminatory intent on the part of an employer through the McDonnell Douglas framework.

C.
1.

On remand, Lawrence must first establish the prima

facie elements for disability discrimination under the proper standard. Assuming Lawrence can satisfy his prima facie burden, then on pretext, his evidence supporting his age discrimination claims would also apply to his ADA disability claim. Just as we found Lawrence presented sufficient evidence to support an inference he was not terminated for a reason unrelated to his age, we find he has advanced enough evidence to cast sufficient doubt upon defendant's claim he was fired for "cause" rather than on account of his physical condition.

2.

Lawrence also challenges the district court's ruling barring his ADA claim for "failure to accommodate" because he never requested an accommodation. Under the ADA, an employer is required to make "reasonable accommodations to the known physical limitations . . . of an otherwise qualified individual with a disability who is an . . . employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business . . . ." 42 U.S.C. § 12112(b)(5)(A). Relying on the Interpretive Guide of Title I of the ADA, the court noted an employer is not expected to accommodate disabilities of which it is unaware. See 42 U.S.C. § 12111(9); 29 C.F.R. app. § 1630.9 (1996) ("In general . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed. When the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation.") (EEOC regulations relating to "reasonable accommodation"). The court observed "plaintiff stated unequivocally . . . he never asked his employer for any type of accommodation" for his physical condition. Lawrence contends an employer's knowledge of the disability is itself enough, and he cites to testimony indicating that National Westminster Bank employees were aware of his condition.

Whether or not a request by a plaintiff for accommodation is required to make an ADA claim is immaterial here, since Lawrence has not alleged or explained what actual accommodations were lacking. We agree with the district court that Lawrence advanced no Rule 56 evidence depicting how National Westminster Bank failed to accommodate him as required by the Act. Under Celotex, "the moving party is [entitled to summary judgment] because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323. Moreover, all of the submitted Rule 56 evidence indicates that National Westminster Bank accommodated Lawrence whenever an accommodation was required. Viewing the evidence in the light most favorable to Lawrence, we conclude the district court properly granted summary judgment against him regarding his ADA "accommodation" claim.

D.

As for Lawrence's LAD claim, the district court

acknowledged Lawrence's assertion his termination violated the Act insofar as it was motivated by his "handicap." Yet, the court did not discuss this claim.

We have previously found that "in adjudicating cases brought under the ADA and NJLAD, courts apply the burden-shifting framework applicable to cases brought under Title VII . . . ." McNemar, 91 F.3d at 619; see Marzano v. Computer Science Corp. Inc., 91 F.3d 497, 502 (3d Cir. 1996). Therefore, the ADA and LAD claims are governed by the same standards. See, e.g., Ensslin v. Township of North Bergen, 646 A.2d 452, 458-59 (N.J. Super. Ct. App. Div. 1994) (noting New Jersey Supreme Court's suggestion of a correlation between state and federal law on handicap discrimination), certif. denied, 663 A.2d 1354 (N.J. 1995); Clowes v. Terminix Int'l, Inc., 538 A.2d 794, 805 (N.J. 1988) (holding once a prima facie case under LAD has been established, the methodology employed by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is followed); Andersen v. Exxon Co., U.S.A., 446 A.2d 486 n.3 (N.J. 1982).

In view of the district court's failure to address the LAD claim, and our prior assessment of the evidence related to the ADA termination claim, we will also reverse the grant of summary judgment regarding the LAD disability claim.

V.A.

National Westminster Bank asked Lawrence to sign a termination agreement which would provide him with severance payments, in exchange for his promise not to take legal action against them. With the advice of counsel, Lawrence refused to sign the agreement. National Westminster Bank gave Lawrence no severance benefits after his termination.

Lawrence contends the denial of severance benefits following his refusal to sign the agreement constituted a breach of contract, as well as unlawful retaliation. The district court dismissed Lawrence's claim because he "admitted" at deposition that he was owed no benefits by National Westminster Bank, and because employees terminated for cause are not entitled to severance benefits. As we have indicated, the court also found Lawrence proffered no evidence contradicting National Westminster Bank's position that he was fired for "cause."

B.

We agree with the district court that were Lawrence terminated for cause, he would not be entitled to receive severance benefits. National Westminster Bank's employment manual contained a schedule setting out severance benefits based on an employee's age and tenure. The manual was silent on whether termination for cause bars severance benefits. Under New Jersey law, a company's employment manual may contractually bind the company. Woolley v. Hoffmann-LaRoche, Inc., 491 A.2d 1257, 1264 (N.J.), modified on other grounds, 499 A.2d 515 (N.J. 1985); see also Witkowski v. Thomas J. Lipton, Inc., 643 A.2d 546, 550 (N.J. 1994) ("An employment manual providing terms and conditions of employment that include grounds and procedures for dismissal can create an employment contract."). But Richard Moore, Executive Vice President of the Trust Department, testified that

National Westminster Bank had a firm and uniform policy against granting severance benefits to employees dismissed for cause. Lawrence presented no evidence indicating National Westminster Bank had a policy entitling such employees to benefits.

In view of Moore's unrebutted testimony, we do not believe the employment manual alone creates a material dispute about whether terminated employees are owed severance benefits. We find the district court properly held that if Lawrence had been terminated for cause, he would not be entitled to severance benefits.

Of course, should a jury find Lawrence was not fired for cause, it could consider whether Lawrence was entitled to severance benefits upon his termination. Under New Jersey law "[t]he key consideration in determining whether an employment manual gives rise to contractual obligations is the reasonable expectation of the employees." Witkowski, 643 A.2d at 550. As we have noted, National Westminster Bank's employment manual set out a schedule for severance benefits based on the employee's position and duration of employment. In the past, severance benefits were paid to terminated employees but not to employees discharged for cause. In the event it is determined Lawrence was not fired for cause, the jury should determine whether there was a reasonable expectation of receiving severance benefits. SeeNicosia v. Wakefern Food Corp., 643 A.2d 554, 562 (N.J. 1994) ("`disputes of fact as to the contract status of an employee under a manual are properly submitted to the jury'") (quoting lower court with approval).

### C.

Lawrence contends his denial of severance benefits following his refusal to sign the termination agreement amounted to "retaliation" and violated provisions of New Jersey statutory law. New Jersey's Conscientious Employee Protection Act provides:

> an employer cannot take any retaliatory action against an employee because the employee does any of the following: discloses, or threatens to disclose . . . the policy or practice of the employer . . . that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law.

N.J.S.A. 34:19-1. New Jersey's Law Against Discrimination makes it unlawful "[f]or any person to take reprisals against any person because he has opposed any practices or acts forbidden [under the Act] . . . or because he has filed a complaint, testified or assisted in any proceeding [under the Act]. N.J.S.A. 10:5-12(d). To establish a prima facie case for retaliation under LAD a plaintiff must show: (1) he engaged in a protected activity; (2) he was discharged subsequent to or contemporaneous with such activity; and (3) a causal link exists between the protected activity and the discharge. Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1995); cf. Jalil v. Avdel Corp., 873 F.2d

701, 708 (3d Cir. 1989) (setting out same elements for retaliation under federal law), cert. denied, 493 U.S. 1023 (1990). Lawrence contends he has established a prima facie case, and that National Westminster Bank has failed to offer a non-retaliatory reason for the adverse action. See Romano, 665 A.2d at 1142 (once plaintiff establishes prima facie elements of retaliation, the defendant must articulate a legitimate, non-retaliatory reason for the decision). National Westminster Bank argues Lawrence has not set out a prima facie case of retaliation. It contends Lawrence's deposition responses show there was no causal link between his refusal to sign the agreement and his subsequent termination and denial of benefits.

The district court dismissed the counts of the complaint alleging National Westminster Bank denied Lawrence benefits in retaliation for his refusal to sign what he believed to be an illegal termination agreement. Again, the court found the record devoid of any evidence to support such an allegation, or that Lawrence was terminated for any reason other than his performance. While we differ with the district court whether there were disputed material facts related to the discrimination and contract claims, we agree with the court there was insufficient evidence of causation.

Lawrence's retaliation theory derives from his refusal of the bank's offer of a severance package conditioned on his accession to the terms of the termination agreement. Yet these actions alone do not create a genuine issue of material fact. National Westminster Bank believed it had no duty to grant severance benefits. All the record evidence demonstrates that National Westminster Bank never offered severance benefits to employees terminated for cause. That it offered Lawrence benefits as inducement to sign the termination agreement does not suggest the failure to tender benefits absent Lawrence's assent was retaliatory. Lawrence offers no evidence for his contention he was denied benefits because of his refusal to sign the termination agreement. Therefore, we will affirm that part of the district court's summary judgment order dismissing Lawrence's retaliation claim.

## VI.
### A.

Lawrence also asserts National Westminster Bank's request that he sign a purportedly illegal termination agreement constituted a violation of the Older Workers Benefit Protection Act ("OWBPA"), a part of the ADEA, 29 U.S.C. § 621 et seq. The OWBPA makes it unlawful to "discharge . . . or otherwise discriminate against any individual" with respect to employment terms or conditions "because of such individual's age." 29 U.S.C § 623(1). In relevant part, OWBPA amended the ADEA, "specifically limiting the manner in which an employee may waive the protections afforded under [the ADEA]." Oberg v. Allied Van Lines, Inc., 11 F.3d 679, 682 (7th Cir. 1993), cert. denied, __ U.S. ___, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1994); see 29 U.S.C. § 626(f); see generally John R. Runyun, Hedging Betts: The Older Workers Benefit Protection Act, 72 Mich. B. J. 168 (1993) (explaining the features of OWBPA).

The district court rejected Lawrence's OWBPA claim, and granted National Westminster Bank's motion for summary judgment. Because Lawrence never signed the agreement, the district court found he suffered no injury under OWBPA. The court also reiterated its view that Lawrence was terminated for cause, and concluded this was the reason he was denied severance benefits. Moreover, the court stated it did not believe a violation of OWBPA alone could serve as the basis for an age discrimination claim under the ADEA, or that Congress created a private right of action for violations of the OWBPA. In the court's view, the only effect of an illegal agreement is that National Westminster Bank cannot rely on it.

Lawrence maintains the court improperly analyzed his OWBPA claim. In particular, he asserts the court erred in concluding he lacked standing because he did not sign the agreement, and in determining the Act does not provide for a private right of action.

### B.

We concur with the district court that Lawrence's OWBPA claim is unfounded. As the court noted, Lawrence never signed the termination agreement presented to him; therefore, he never "waived" his rights under the Act and cannot establish a violation of § 626(f). The alleged effort to induce him to sign the agreement could not result in a violation of OWBPA's waiver provisions.

Because Lawrence suffered no injury cognizable under the OWBPA, we need not decide whether the waiver provisions of OWBPA may be enforced through private civil actions.

### VII.

Finally, Lawrence argues the statutory violations he alleged were also violations of New Jersey public policy. We hold the district court correctly dismissed Lawrence's public policy claim.

Under New Jersey law "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." See Pierce v. Ortho Pharmaceutical Corp., 417 A.2d 505, 512 (N.J. 1980). "The sources of public policy include legislation; administrative rule, regulations or decisions; and judicial decisions." Id. Because the sources of public policy Lawrence relies on are coterminous with his statutory claims, he cannot advance a separate common law public policy claim. See Catalane v. Gilian Instrument Corp., 638 A.2d 1341, 1349 (N.J. Super. Ct. App. Div.) (ruling common law claim of violation of public policy should not be submitted to jury where statutory remedy under LAD exists), certif. denied, 642 A.2d 1006 (N.J. 1994); cf. Shaner v. Horizon Bancorp., 561 A.2d 1130, 1141 (N.J. 1989) ("Because the LAD provides . . . a remedy, it might be unnecessary to recognize or create a Pierce-type action to vindicate substantially the same rights and provide similar relief.").

Moreover, the paradigmatic dismissal giving rise to a public policy cause of action is the termination of an employee in retaliation for the employee's refusal to act contrary to public policy. See Citizens State Bank, New Jersey v.

Libertelli, 521 A.2d 867, 869 (N.J. Super. Ct. App. Div. 1987) (explaining Pierce protects an employee from retaliation for refusal to commit an act violating a clear mandate of public policy).  As noted, we agree with the district court that Lawrence has advanced no evidence of retaliation.

We will affirm the district court's grant of summary judgment against Lawrence on his public policy claim.

VIII.

For the foregoing reasons we will affirm in part and reverse in part the judgment of the district court.  We will remand to the district court for proceedings consistent with this opinion.