**Frederick J. AUFDENCAMP, Plaintiff,**

v.

**IRENE STACY COMMUNITY MENTAL HEALTH CENTER, Defendant.**

**No. CIV.A. 99–1804.**

United States District Court, W.D. Pennsylvania.

Nov. 25, 2002.

John R. Orie, Jr., Orie & Zivic, Pittsburgh, PA, for Plaintiff.

David R. Johnson, Thomas B. Anderson, Thomson, Rhodes & Cowie, Pittsburgh, PA, for Defendant.

## *MEMORANDUM ORDER*

CINDRICH, District Judge.

This is a wrongful termination of employment case. Plaintiff had been employed as a drug and alcohol counselor at defendant Irene Stacy Community Mental Health Center (the "Center") since 1974. In this action, Plaintiff alleges that defendant violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 et seq., and the

Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. Plaintiff has also filed a separate action in state court, alleging that his termination was in violation of the Pennsylvania Whistle Blower Act.

*Age Discrimination Claims*

 The ADEA and PHRA claims are analyzed under the familiar *McDonnell Douglas* burden-shifting standard. Plaintiff can establish a prima facie case of age discrimination. He was 57 years old in June, 1998, when he was terminated. He was qualified for the position and had been performing it for some 24 years. He suffered an adverse employment action in the form of a forced retirement (in lieu of being fired). Finally, he was replaced by a substantially younger individual. Defendant has articulated a legitimate, non-discriminatory reason for the discharge, namely that plaintiff's performance was unsatisfactory. Thus, as with most such cases, the real dispute is whether the defendant's reason was pretextual.

 In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court made clear that a "pretext only" standard, rather than a "pretext plus" rule, generally applies. In other words, if there is evidence that the employer's proffered reason is pretextual, the trier of fact may permissibly infer that the employer is dissembling to cover up discrimination. However, the inference of discrimination must be reasonable. This will be shown in the vast majority of cases by the absence of alternative reasons. *Id.* As the Court noted, it is not enough to simply disbelieve the employer, "the ultimate question is whether the employer intentionally discriminated." *Id.* at 146–47, 120 S.Ct. 2097.

The Court further explained the limits of its "pretext only" standard:

This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. *See Aka v. Washington Hospital Center*, 156 F.3d, at 1291–1292; *see also Fisher v. Vassar College*, 114 F.3d, at 1338 ("[I]f the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent").

*Id.* at 148, 120 S.Ct. 2097. This portion of the *Reeves* opinion has not been addressed by the Court of Appeals for the Third Circuit in a published opinion, although the Court did quote this language in *Elwell v. PP&L, Inc.*, 47 Fed.Appx. 183, 186–87 (3d Cir.2002) (non-precedential).

As applicable to this case, this exception to the "pretext only" standard means that plaintiff cannot survive summary judgment if the jury could not conclude that the employer's stated reasons were a pretext for terminating plaintiff due to his age, even if the stated reasons were a pretext for retaliation due to his alleged whistleblowing activities. *Reeves* does not require us to send every discrimination case where there is evidence of pretext to the

jury, no matter how improbable or attenuated the inference of discrimination is.

With this background, we turn to the facts, analyzing them in the light most favorable to plaintiff, the non-moving party. In April of 1998, plaintiff objected to the way the county conducted an audit of the Center. Specifically, plaintiff contended that using a receptionist and intern to review the Center's files constituted a breach of confidentiality of patient records. One of Aufdencamp's subordinates wrote an accusatory letter to the county. According to plaintiff, Shirley Hignet and Randon C. Simmons, M.D., the decisionmakers in his termination, were upset because they feared this conduct would jeopardize the Center's funding. Aufdencamp Dep. Exh. 12. In May of 1998, plaintiff was harshly criticized by Ms. Hignet and Dr. Simmons over this incident. *Id.* On June 1, 1998, plaintiff was told to either accept early retirement or be terminated.

Plaintiff's performance records are somewhat mixed. On September 15, 1995, Shirley Hignet provided a review with several areas marked "Unsatisfactory." There is no evidence that these concerns were discussed with plaintiff. Aufdencamp Dep. at 50–53. In February 1996, Shirley Hignet notified plaintiff that he would be terminated. Ms. Hignet cited four reasons: (1) plaintiff miscounted units of service; (2) he was not being spontaneous in solving problems; (3) another center was getting more county money; and (4) he was not marketing the program to bring in more clients. Aufdencamp Dep. Exh. 3. However, when plaintiff met with

Ms. Hignet, she rescinded her decision and told. him that he "had nothing to worry about." [1] Aufdencamp Dep. at 38–39. Plaintiff received a performance evaluation dated March 11, 1996, that showed no "unsatisfactory" issues. Aufdencamp Dep. Exh. 5. Plaintiff did not receive any other performance reviews prior to his termination in June 1998.[2] Because over two years had passed, without any criticism, a factfinder could reasonably conclude that the problems identified in 1996 did not justify his termination in 1998.

In reviewing his personnel file after he was terminated, plaintiff discovered a performance evaluation dated May 18, 1998. Aufdencamp Dep. at 59–60. This appraisal form identified 14 of the 19 categories as showing unsatisfactory performance. Aufdencamp Dep. Exh. 6. A reasonable jury could conclude that the May 18, 1998 evaluation constituted a post-hoc attempt to justify the Center's decision. *Lawrence v. National Westminster Bank of New Jersey,* 98 F.3d 61, 66 (3d Cir.1996) (reversing grant of summary judgment because performance review not given to employee could be viewed as after-the-fact rationalization). In summary, we conclude that plaintiff has cast sufficient doubt on the Center's stated reasons to allow a jury to conclude that they were pretextual.

However, this does not end the analysis. We believe that this case involves one of the unusual instances contemplated by *Reeves.* The record is totally devoid of evidence of age discrimination. Plaintiff was questioned at length in his deposition

---

**1.** The court notes that this episode cuts both ways. Plaintiff testified that he raised questions about another employee who was not terminated despite falsifying invoices. Aufdencamp Dep. at 39. Thus, defendant could argue that the retraction of plaintiff's termination should not be taken as an endorsement of his performance. Nevertheless, for pur-

poses of this summary judgment motion, the inferences will be drawn in the light most favorable to Aufdencamp.

**2.** Aufdencamp did receive a letter from Dr. Simmons on July 24, 1997, pointing out deficiencies in completing patient charts. Aufdencamp Dep. Exh. 8.

about the reasons for his termination. Mr. Aufdencamp cited numerous reasons, including his response to the county's audit, negative comments made about him by a local judge, performance criticisms, the financial strain on the department caused by his salary, and his failure to reprimand the subordinate who raised the breach of confidentiality issue with the county auditors. Aufdencamp Dep. at 98–102. Significantly, plaintiff never produced evidence, or testified, that he was terminated due to his age. Indeed, plaintiff's brief merely contends that defendant's reasons were pretextual.

On this record, we are convinced that no reasonable jury could conclude that plaintiff's termination was due to age discrimination. Although there is evidence that defendant's reasons were pretextual, this is the rare case in which there is a compelling alternative to age discrimination. The record conclusively demonstrates that if the defendant's reasons were pretextual, it was trying to cover up retaliation based on plaintiff's whistle-blowing actions, rather than his age. Plaintiff's lawsuit based on that theory is now pending in the state court. Accordingly, defendant's motion for summary judgment on the age discrimination counts will be granted.

*ERISA Claim*

 Section 510 of ERISA makes it unlawful for an employer to discharge an employee "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. In order to make out an ERISA violation, plaintiff must present evidence establishing: (1) prohibited employer conduct; (2) taken for the purpose of interfering; (3) with the attainment of any right under ERISA to which the employee may become entitled. *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir.1987). As the Court of Appeals explained, Section 510 prevents unscrupulous employers from discharging employees to prevent them from obtaining vested pension benefits. *Id.* at 851.

 However, plaintiff must show that the defendant-employer had a "specific intent" to violate ERISA. Proof of "an incidental loss of benefits as a result of a termination" will not make out a Section 510 claim. *Id.* This intent can be shown by demonstrating that the employer made a conscious decision to interfere with the employee's attainment of benefits. *DiFederico v. Rolm Co.*, 201 F.3d 200, 205 (3d Cir.2000).

In this case, plaintiff cites to evidence that the employer was financially strapped and that his salary was a known financial strain. Aufdencamp Dep. at 33–34, 48–49, 101. This information is plainly insufficient. First, there is no evidence that anybody from the Center expressed concerns about plaintiff's salary. Second, there is no reasonable connection between Shirley Hignet's comment about the Center's financial condition in 1996 and plaintiff's termination in 1998. Most importantly, the record is completely devoid of any evidence that defendant considered the ERISA ramifications as part of plaintiff's termination. To the contrary, the record here shows that the loss of ERISA benefits was merely "an incidental loss of benefits as a result of a termination." Pursuant to *Gavalik*, this will not support an ERISA violation and defendant's motion for summary judgment will be granted as to the ERISA claim.

For the reasons stated above, defendant's Motion for Summary Judgment (Doc. No. 23) is **GRANTED**. The clerk is directed to mark this case closed.