**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3632
_____

RYAN BROWN,
                                                    Appellant

v.

CITY OF LONG BRANCH; HOWARD H. WOOLLEY, In his
personal and professional capacity; WILLIAMS RICHARD, In his
personal and professional capacity; TOMAS SHEA, In his personal and
professional capacity; JOHN DOE, In his personal and professional capacity

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 09-cv-02264)
District Judge:  Honorable Joel A. Pisano

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 11, 2010
Before: RENDELL, HARDIMAN and ALDISERT, Circuit Judges

(Opinion filed: May 19, 2010)
_____

OPINION
_____

PER CURIAM

    Ryan Brown appeals from the District Court's order dismissing his complaint.  We

will affirm in part, vacate in part, and remand for further proceedings.

I.

Brown was employed by the City of Long Branch, New Jersey, as a Special Law Enforcement Officer II ("SLEO II").[1]  He filed suit pro se against the City and several individual defendants, alleging generally that they discriminated against him on the basis of a disability that he describes as anxiety and depression.[2]

In particular, Brown alleges that defendants placed him on unarmed "modified duty" on August 13, 2008, after learning that he sought professional treatment for his conditions.  Defendant John Doe 1, a shift supervisor, notified Brown of that placement when Brown arrived for work that day.  While doing so, he revealed Brown's medical condition by questioning him about his depression in the presence of other employees.

The next week, Brown met with a Captain Muolo to complain about the disclosure of his medical condition by John Doe 1 and others.  Captain Muolo told him that his medical records were not confidential, terminated the meeting, and asked Brown to leave.  Defendant Thomas Shea, an Internal Affairs Officer, then approached Brown in the parking lot and told him he should resign.

---

[1] The precise nature and duties of Brown's employment are not clear from the existing record.  He asserts in his complaint that he was assigned to the "Fire Prevention Bureau," (Compl. at 5, 10-11), and has suggested in other filings that he worked as a "code enforcement officer," which defendants dispute.

[2] Brown's allegations are not set forth in numbered paragraphs as required by Rule 10(b). As discussed below, the District Court may require Brown to remedy that deficiency if and when appropriate on remand.  We summarize only those allegations of the complaint relevant to our disposition, and we accept them as true for Rule 12(b)(6) purposes only.  See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

2

Brown alleges that defendants decided to terminate his employment because of his complaints and began reinvestigating his background toward that end. He also alleges that he filed a complaint with the United States Department of Health and Human Services ("DHHS") regarding the disclosure of his medical information and a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding the allegedly retaliatory reinvestigation. Defendants' investigation ultimately revealed that Brown had failed to disclose on his employment application a conviction for contempt of court (apparently for failing to appear for a traffic summons). The City thereafter issued a preliminary notice of disciplinary action charging him with conduct unbecoming an officer on that basis.

On October 2, 2008, Brown reported for a fitness-for-duty examination by Nancy B. Gallina, Ph.D. Dr. Gallina concluded that Brown was a danger to himself and others and was unfit to perform the duties of an SLEO II. The City then amended its notice of disciplinary action to state its intention to terminate Brown on the basis of Dr. Gallina's report as well.

Brown received a hearing on November 5, 2008. He acknowledges that he did not dispute Dr. Gallina's report at that time even though he disagreed with it. Instead, he requested a reasonable accommodation. In particular, he alleges that he reminded defendants Howard Woolley and William Richards that he was trained as a police dispatcher, told them that the letter placing him on modified duty noted that he could be

3

reassigned to "desk duty," and requested reassignment. They denied his request on the grounds that he would remain a danger to himself and others because, even in other capacities, he still would have immediate access to weapons. The City issued a report on November 7, 2008, concluding that Brown was incapacitated and unfit for duty, and it terminated him without reassignment.

On the basis of these allegations, Brown asserted five claims: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 to 12213, the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 to -49, and the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann §§ 34:19-1 to -14; (2) hostile work environment; (3) retaliation in violation of the NJLAD and the CEPA; (4) intentional infliction of emotional distress; and (5) wrongful termination under Pierce v. Ortho Pharm. Corp., 417 A.2d 505 (N.J. 1980). Defendants moved to dismiss Brown's complaint under Rule 12(b)(6), and the District Court granted the motion by order entered September 3, 2009. Brown appeals.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's dismissal under Rule 12(b)(6) de novo. See Phillips, 515 F.3d at 224. In doing so, we "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Id. at 233 (citation omitted). The factual

4

allegations in the complaint must be sufficient to "'raise a right to relief above the speculative level.'" Id. at 234 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Pro se complaints, however, must be "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers[.]'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

We agree that Brown failed to state claims for a hostile work environment or intentional infliction of emotional distress for the reasons explained by the District Court (and, though the District Court did not address the issue, we conclude that any amendment would be futile for those same reasons, see Phillips, 515 F.3d at 245). We will thus affirm to that extent. Brown's remaining claims, however, are sufficient to survive dismissal under Rule 12(b)(6).

First, Brown stated a claim for disability discrimination under the ADA and the NJLAD.[3] Brown alleges that defendants discriminated against him both by terminating his employment and by refusing to provide a reasonable accommodation through reassignment. To state a claim for discrimination under the ADA, a plaintiff must allege that: "'(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; and (3) he has suffered an otherwise adverse

---

[3]Brown asserted a disability discrimination claim under CEPA as well, but that statute protects employees from retaliation for "whistleblowing" activities and does not independently prohibit disability discrimination. See N.J. Stat. Ann. § 34:19-3.

employment decision as a result of discrimination.'" Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (citation omitted). NJLAD claims generally are governed by the same standards. See Lawrence v. Nat'l Westminster Bank N.J., 98 F.3d 61, 70 (3d Cir. 1996).

In this case, the District Court assumed that Brown suffered from a disability, but concluded that he was not qualified to perform the essential functions of an SLEO II or any alternative position. According to the District Court, Brown "concedes" that he was unable to do so because "he acknowledged in his Complaint, that Gallina determined that he was a danger to himself and others" and that "she recommended that he be removed from his capacity as an SLEO which required that he have immediate access to weapons." (Dist. Ct. Op. at 5-6.) Brown, however, did not "concede" that he was not qualified to perform the functions of his job. To the contrary, he alleged only that Dr. Gallina reached that conclusion, and specifically alleged that he disagreed with it. (Compl. at 5.)[4] The District Court further concluded that "Brown was not able to perform the role of a dispatcher, which would have been a reasonable accommodation, because that role also required him to be in close proximity to weapons." (Dist. Ct. Op. at 6.) Once again,

---

[4]On appeal, defendants argue that Brown was not qualified to perform his job because he admitted that he did not challenge Dr. Gallina's conclusion to that effect at the November 2 hearing. We decline to draw that inference in defendants' favor at the pleading stage, particularly in light of Brown's further allegation that he did not challenge Dr. Gallina's conclusion only because he decided to request a reasonable accommodation instead. (Comlp. at 4-5.)

6

however, Brown alleged merely that <u>defendants</u> refused to accommodate him on that basis, and he protested that he had been permitted to serve unarmed "desk duty" in the past. (Compl. at 5.) Thus, the District Court should not have concluded at the pleading stage that Brown in fact was not qualified to perform his job or for reassignment. <u>Cf.</u> <u>Williams</u>, 380 F.3d at 768-69 (vacating <u>summary judgment</u> in light of factual dispute regarding whether police officer with mental instability could be accommodated by reassignment as a dispatcher notwithstanding proximity to firearms). The District Court also faulted Brown for failing to allege additional facts suggesting that he <u>was</u> qualified, but our plenary review of the complaint reveals that Brown adequately stated claims under the ADA and NJLAD.

Second, Brown also stated a claim for retaliation under CEPA. To state a claim under CEPA, a plaintiff must allege that: "'(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in [CEPA]; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistleblowing activity and the adverse employment action.'" <u>Caver v. City of Trenton</u>, 420 F.3d 243, 254 (3d Cir. 2005) (citation omitted).

The District Court dismissed this claim because it believed Brown failed to state the first, second and fourth of these elements. We disagree. Brown alleged that he

7

complained to Captain Muolo about the "unlawful disclosure of my medical records," filed a complaint with the DHHS regarding the "violation of my right to medical privacy," and filed a complaint with the EEOC regarding defendants' allegedly retaliatory investigation of his background. (Compl. at 7.) Those allegations satisfy the first two elements. See N.J. Stat. Ann. 34:19-3(a) (protected activity includes "disclos[ures] . . . to a supervisor or to a public body"); Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 93 n.4 (3d Cir. 1999) ("[A] CEPA plaintiff need not cite 'any specific statute, rule or regulation which was allegedly violated' when disclosing employer wrongdoing or even when filing a CEPA action.") (citation omitted).

Regarding causation, the District Court concluded that Brown pleaded "no facts suggesting that the Defendants were even aware of these complaints" and "no facts suggesting that his complaints were related to his ultimate termination." (Dist. Ct. Op. at 7-8.) Brown, however, alleges that defendant Shea told him he should resign immediately after he complained to Captain Muolo about the disclosure of his medical information and that "[t]he City made a decision to have me terminated once I began to complain of the violation of my right to privacy as to my medical information." (Compl. at 7.) He also alleged that, prior to that incident, he was an "exceptional employee with a flawless track record" and had been "commended on several occasions," but that "once I began to complain of the City's violation of my right to privacy, I was targeted for

8

termination." (Id. at 7-8.) These allegations are sufficient for pleading purposes.[5]

Finally, Brown stated a claim for wrongful termination under Pierce. Under Pierce, "an at-will employee 'has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy.'" Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 148 (3d Cir. 2004) (quoting Pierce, 417 A.2d at 512). The District Court dismissed this claim on the sole ground that Brown "has not identified a 'clear mandate of public policy' that was violated as a result of his termination." (Dist. Ct. Op. at 9.) Brown, however, has alleged violations of the ADA and NJLAD. Cf. Conoshenti, 364 F.3d at 149 n.13 (noting New Jersey decision allowing Pierce claim predicated on violation of the federal Family and Medical Leave Act). A wrongful discharge under the ADA and NJLAD may constitute a wrongful discharge under Pierce as well, "although it is not clear to us that a Pierce claim in that event would be of any additional benefit to" Brown. Id. at 149. We leave it to the District Court to consider that issue if and when appropriate on the basis of a more fully developed record.[6]

---

[5]Brown also asserted a retaliation claim under NJLAD on the basis of these same allegations. As defendants argue, however, the institution of a CEPA action statutorily waives all other claims of retaliation under state law. See N.J. Stat. Ann. § 34:19-8; Baldassare v. New Jersey, 250 F.3d 188, 202 (3d Cir. 2001). Brown has not asserted a retaliation claim under the ADA.

[6]Defendants argue that Brown has waived his Pierce claim too by filing a CEPA action. The CEPA waiver provision, however, does not apply to "'causes of action that are substantially independent of the CEPA claim.'" Baldassare, 250 F.3d at 202 (citation omitted). Thus, that provision does not bar Brown's Pierce claim to the extent that it is based on discrimination as opposed to retaliation.

9

In sum, Brown has stated claims for (1) disability discrimination under the ADA and NJLAD, (2) retaliation under CEPA, and (3) wrongful discharge under <u>Pierce</u>. We thus vacate the District Court's dismissal of those claims and remand for further proceedings. We emphasize that "[s]tandards of pleading are not standards of proof," and we express no opinion on whether Brown will be able to prove his claims. <u>Phillips</u>, 515 F.3d at 246.

In addition, we note that defendants requested, as an alternative to dismissal, a more definite statement under Rule 12(e). The District Court denied that request because it concluded that Brown's complaint is not so vague or ambiguous that defendants could not address it by means of a Rule 12(b)(6) motion. (Dist. Ct. Op. at 4.) We now have held that four of Brown's claims survive dismissal under Rule 12(b)(6). Because Brown's allegations are not set forth in numbered paragraphs as required by Rule 10(b), our ruling is without prejudice to defendants' ability to renew their Rule 12(e) motion to seek compliance with Rule 10(b) if they believe that Brown's noncompliance prejudices their ability to answer. <u>See</u> <u>Phillips v. Girdich</u>, 408 F.3d 124, 128 (2d Cir. 2005). We express no opinion on that issue.