**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2137
_____

B. JANET PETTI,
Appellant

v.

OCEAN COUNTY BOARD OF HEALTH;
OCEAN COUNTY HEALTH DEPARTMENT
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civil Action No. 3:15-cv-07305)
District Judge: Honorable Brian R. Martinotti

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 21, 2020
Before: AMBRO, GREENAWAY, Jr., and PORTER, <u>Circuit</u> <u>Judges</u>

(Opinion filed March 31, 2020)
_____

OPINION*
_____

PER CURIAM

      Pro se appellant B. Janet Petti appeals the District Court's grant of summary

---

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

judgment in favor of defendants Ocean County Board of Health and Ocean County Health Department ("OCHD"). Petti brought claims of discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., and wrongful termination. For the reasons that follow, we will affirm the District Court's judgment.

I.

Petti began working as an accountant for OCHD in 2004.[1] She worked in one of the two buildings at OCHD's office campus. In November 2012, construction began at the building next to Petti's; the windows in her building were taped in preparation. Later that month, she emailed Ocean County's Director of Administration and Program Development, Victoria Miragliotta, to ask whether construction debris containing asbestos was getting into her building, out of concern that it could aggravate an unspecified medical condition. Several days later, Petti emailed Miragliotta and Ocean County's Public Health Coordinator to inform them that she had observed construction debris on her windowsill and her notebooks. Petti also asked whether the construction work outside was being safely performed. Miragliotta responded that an asbestos sampling survey had been conducted on the construction site in March 2012 which concluded that there was no asbestos-containing material at the site per Environmental Protection Agency guidelines. Miragliotta also informed Petti that her building's

---

[1] The following facts are undisputed unless otherwise noted.

2

ventilation system was not connected to any demolition that was occurring involving the other building. Petti restated her concerns about construction debris getting into her work area to her direct supervisor.

In early December, Petti's work location was temporarily transferred to a different building away from OCHD's office campus. Toward the end of December, her supervisor told Petti that she would be transferred back in early January. She received a report, conducted at the construction site by an external consultant during her absence, indicating that the construction site was free of external debris or other hazards. Petti subsequently filed an occupational safety complaint with New Jersey's Public Employees Occupational Safety and Health Program ("PEOSH") stating concerns about air quality and debris at her workplace.

On her second day back at the office — which was ultimately her last day working at OCHD — Petti left early and submitted a letter to her supervisor requesting unspecified reasonable accommodations. She also submitted a doctor's note on her return stating that she was advised to avoid exposure to dust, chemicals, construction materials, and respiratory irritants, due to "pulmonary dysfunction." App. at 50. Miragliotta sent Petti a letter that day confirming that she had been sent two reports indicating that her building was safe from construction debris and informing her that other OCHD offices had ongoing construction.

On January 9, 2013, Petti indicated that she had experienced an allergic reaction

3

when she had returned to the office and asked to be moved to a different building. She submitted a doctor's note requesting that she be excused from work due to allergy symptoms of an "undetermined etiology." Appellees' Suppl. App. at 430. Several days later, Petti requested workers' compensation because her whole body was itchy and her eyes were swollen; Petti claimed that the reaction stemmed from exposure to construction debris. She also submitted a letter from her doctor requesting that she be relocated so that she would "not be exposed to irritants that exacerbate her lung condition." App. at 56. Petti then underwent a physical examination pursuant to her workers' compensation request. The examining doctor noted that Petti repeatedly denied having any breathing problems or a rash and that she refused to consent to pulmonary function tests or to permit the doctor to speak with her other physicians. The doctor ultimately concluded that the itchiness Petti reported was likely due to dry skin.

On January 16, 2013, Ocean County's Public Health Coordinator informed Petti that he was researching her concerns. Petti then submitted a leave request backdated to January 2, 2013, under the Family and Medical Leave Act ("FMLA"). She attached a medical certificate by her doctor stating that she was experiencing "shortness of breath after exposure to construction dust." Appellees' Suppl. App. at 476. On February 7, 2013, Petti's FMLA request was approved for 12 weeks.

While Petti was on FMLA leave, Ocean County contracted an external evaluator to test the room where Petti worked and surrounding rooms for mold; the tests came back

4

in the normal range. Additionally, PEOSH conducted an unannounced inspection of Ocean County's Finance Department, in which investigators interviewed employees and conducted air quality tests of the room in which Petti worked and the area outside of the building. The Enforcement Coordinator of PEOSH concluded that no violations of health standards were observed during the inspection.

On April 8, 2013, Petti submitted a request for an additional leave of absence with an indeterminate end date, indicating that "she need[ed] to be away from construction dust." Appellees' Suppl. App. at 512. Her request was denied several days later because she failed to provide a complete medical certification or an end date. Petti was directed to return to work, but she did not return.

On May 8, 2013, Miragliotta sent Petti a letter detailing the steps that had been taken to ensure that her workplace was safe and noting the doctor's evaluation from her workers' compensation examination. The letter indicated that Petti's work location had been moved away from the windows in her office, that she would be provided with a respirator or particulate dust mask at work, and that, "out of an abundance of caution," an air scrubber would be installed in her department. App. at 66.

Through an attorney, Petti requested information about the particulate dust mask. At the end of May, Petti's doctor sent a letter to OCHD stating that Petti could not wear a respirator for extended periods of time because she had a neck injury and a latex allergy. Ocean County's legal counsel requested a meeting with Petti, but she did not respond.

In July, Ocean County initiated formal disciplinary proceedings to terminate Petti for insubordination, excessive absenteeism,[2] and resignation not in good standing. On August 21, 2013, a hearing officer concluded that Ocean County's termination of Petti was warranted on all three proposed grounds. After Petti appealed the determination, an administrative law judge upheld the charges of excessive absenteeism and resignation not in good standing. However, he dismissed the charge of insubordination as unwarranted after concluding that Petti reasonably relied on her doctors' opinions; he also determined that a sixty-day suspension and resignation in good standing was the appropriate sanction. His decision was upheld on appeal.

Petti commenced this action in the District Court in October 2015.[3] Following early litigation and discovery, defendants moved for summary judgment. The District Court granted their motion. Petti timely appealed after the District Court granted her an extension of time to appeal under Federal Rule of Appellate Procedure 4(a)(5).

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment for defendants. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment

---

[2] Petti's disciplinary record included instances of excessive breaks and absences in March and June 2012, prior to the beginning of the construction work.

[3] Petti filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination in May 2014. She was ultimately issued a right-to-sue letter regarding her charge.

is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

III.

We agree with the District Court's grant of summary judgment for defendants. First, Petti did not state a prima facie case of ADA discrimination based on her claim that OCHD failed to provide requested reasonable accommodations. To establish a prima facie case of discrimination under the ADA, an employee must show that she: (1) is disabled; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by her employer; and (3) has suffered an adverse employment action as a result of her disability, including her employer's refusal to make reasonable accommodation for her disability. Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 186 (3d Cir. 2009). Once an employee requests a reasonable accommodation, her employer must assist the employee in seeking accommodations through a "flexible, interactive process," id. at 187 (internal citation omitted), and both employers and employees "have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith," Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999).

In this case, assuming without deciding that Petti can make out the first two elements of a prima facie case, the record reflects OCHD's consistent good faith efforts to respond to Petti's requests regarding the safety of her workplace, given the medical conditions she represented she had. See id. at 317 ("All the interactive process requires is that employers make a good-faith effort to seek accommodations."). OCHD promptly responded to Petti's initial requests about environmental hazards with information about prior safety testing that had been conducted on the site and information about her building's separate ventilation system. In response to Petti's continued concerns, OCHD moved her to another location while it investigated the safety of her work space. After an external consultant examined the site and determined that the outside construction work was free of external debris or other hazards, she was asked to return to her usual work location. In early January, after Petti reported having an allergic reaction at work, OCHD informed her that it would again review her concerns; in the following month, OCHD approved her request for FMLA leave, hired another external consultant to conduct mold testing, and complied with an unannounced PEOSH inspection.

After mold testing came back in the normal range and the PEOSH inspection came back without any violations, OCHD denied Petti's incomplete request for a further leave of absence but offered to install an air scrubber in her workspace and provide her with a respirator or a particulate dust mask; it also noted that her work location had been moved away from any windows. Petti requested further information about the particulate dust

8

mask, but communication ultimately broke down when Petti failed to respond OCHD's request for a meeting to discuss its proposed accommodations for her. See id. (explaining that "an employer cannot be faulted if after conferring with the employee to find possible accommodations," the interactive process breaks down due to the employee's actions or omissions). Although Petti insisted at several points during this process that the only solution to her concerns was to move her to another building outside of her department, she did not provide evidence to explain how her concerns could be accommodated elsewhere when other OCHD buildings were also undergoing construction. Accordingly, the District Court correctly granted summary judgment for defendants on Petti's ADA discrimination claim.

Next, Petti failed to establish a prima facie case of Title VII retaliation because she did not show that her engagement in a protected activity under Title VII was a but-for cause of her termination. To make out a prima facie case of Title VII retaliation, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted). A plaintiff asserting a Title VII retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013).

9

Petti has argued that her filing of a confidential complaint with PEOSH constitutes protected activity and that she was fired in retaliation for filing that complaint. However, even assuming that OCHD knew that Petti filed a complaint, she relies solely on the time that passed between her complaint and her termination to establish causation. See Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 260 (3d Cir. 2017) (explaining that a plaintiff can establish but-for causation "by proffering evidence of an employer's inconsistent explanation for taking an adverse employment action, a pattern of antagonism, or temporal proximity 'unusually suggestive of retaliatory motive'") (internal citations omitted). The six months that passed between Petti's filing of a complaint and OCHD's initiation of termination proceedings against her are not "unusually suggestive of retaliatory motive" such that timing alone could establish but-for causation. See Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (concluding that a gap of over two months, taken alone, is insufficient to be "unduly suggestive" of retaliation), superseded by statute on other grounds as stated in Robinson v. First State Cmty. Action Agency, 920 F.3d 182, 187-89 & n.30 (3d Cir. 2019). Thus, summary judgment was properly granted for defendants on Petti's retaliation claim.

Finally, we agree with the District Court that Petti's common law claim for wrongful termination is preempted where she has a statutory remedy. See Lawrence v. Nat'l Westminster Bank N.J., 98 F.3d 61, 73 (3d Cir. 1996) (stating that where "the

10

sources of public policy [a plaintiff] relies on are coterminous with his statutory claims,

he cannot advance a separate common law public policy claim"). Petti's wrongful

termination claim was based on the same facts as her discrimination and retaliation

claims. Because a wrongful termination claim would not protect any additional interest

beyond the protections of the ADA and Title VII under these circumstances, summary

judgment was properly granted for defendants on Petti's remaining claim.[4]

Accordingly, we will affirm the judgment of the District Court.[5]

---

[4] To the extent that Petti challenges the District Court's resolution of several motions she filed, we conclude that the District Court did not err in its decisions.

[5] Additionally, we grant appellees' motion to file a supplemental appendix, which includes relevant documents from the record that Petti did not provide in her appendix, and deny Petti's motion to file a supplemental appendix, which does not contain record evidence. We deny Petti's motion for sanctions, her motion for oral argument, and her motion to strike appellees' response to her motion for oral argument; we grant Petti's motion to file corrections to her brief.